## ADAY et al. v. McMINN COUNTY BOARD OF EDUCATION et al.—257 S. W. (2d) 698.

Eastern Section.   March 20, 1952.

Petition for Certiorari denied by Supreme Court, October 10, 1952.

452

C. T. Ziegler and Frank N. Bratton, both of Athens, for complainants.

Duggan & Washington and Jack Johnson, all of Athens, for defendants.

HALE, J.  The complainants, who taught in the public schools of McMinn County for the scholastic year 1949-50, filed this suit to recover additional compensation allegedly due them by virtue of the provisions of Ch. 9 of the Public Acts of 1949.  The amount claimed is 15% in excess of the minimum state salary schedule fixed in

said Act and is based upon the action of the Board of Education in paying such salaries, i. e., 15% in excess of the state minimum, for the scholastic year 1948-1949. The materiality of this action for such preceding term will appear hereafter. The Chancellor allowed general increases of seven to eight per cent for the reason hereinafter set forth. From the decree both the complainants and defendants appeal and assign errors.

Due in part to agitation for payment of increased salaries to teachers, there was enacted Ch. 9 of the Public Acts of 1949, which is captioned:

"An Act to provide for the operation of the educational system of the State, including capital outlay, by making appropriations therefor, by regulating the expenditure of such appropriations and by providing for the powers of the institutions and agencies in such systems; and to repeal Chapter 8, Public Acts of 1947, the caption of which is as follows: 'An Act to provide for the operation of the Educational System of the State by making appropriations therefor, for the coming biennium, by regulating the expenditure of such appropriations and by providing for the powers of the institutions and agencies in such system.' "

Section 9 of said Act is as follows:

"Be it further enacted, That it is hereby declared to be the intent of the General Assembly that every teacher, principal, supervisor of instruction, or superintendent in every public school in the State in both equalizing and non-equalizing counties shall receive during each year of the biennium 1949-1951 an increase above the salary for which he originally contracted for the school term, 1948-1949, or above that salary including the increments to which he would be entitled under the salary schedule in

454

effect at the beginning of the school year 1948-1949, the amount of such increase to be determined in the following manner: The State Board of Education shall formulate a state salary schedule which shall include as a base a salary of at least Two Thousand ($2,000.00) Dollars per school year of nine (9) months for the beginning certificated teacher with a Bachelor's degree from an approved college, and which schedule shall include increases over the 1948-1949 salary schedule for other teachers depending upon their training and experience. The difference between the salary schedule provided for each training and experience category in the state salary schedule of 1949-1950 and that provided in the state salary schedule of 1948-1949 will be the salary increase in dollars and cents with each teacher, principal, supervisor, and superintendent in each training and experience category will be entitled to receive each year of the 1949-1951 biennium.

"In cases of employment after the opening of the regular school term, the employee shall be guaranteed a salary increase at the rate of increase as herein set forth over and above the annual salary to which he would have been entitled if he had been employed for a full term under the salary schedule in effect at the beginning of the 1948-1949 school term.

"It is expressly provided that any county, city, or special school district which allowed any teacher, principal, supervisor of instruction, or superintendent at the beginning of the 1948-1949 school term an amount in addition to the increments to which he would be entitled under the state salary schedule in effect at the beginning of the 1948-1949 school term, which additional amount was paid entirely out of local funds, and which additional amount is not otherwise included in the salary to which said teacher, principal, supervisor of instruction, or

superintendent is entitled under the provisions of this Act, then, and in that event, said county, city, or special school district shall continue to pay such additional amount out of local funds, it being the legislative intent that every teacher, principal, supervisor of instruction, and superintendent shall receive a salary not less than that contracted for as of the beginning of the 1948-1949 school term as defined hereinabove in this paragraph, plus at least the difference between the amount to which he would be entitled under the state salary schedule of 1948-1949 and the state schedule the State Board of Education is herein instructed to set up for each year of the biennium 1949-1951.''

If this statute is constitutional, it will be seen that the rights of these teachers for the year 1949-1950 depend upon their salary status during the year 1948-1949.

These teachers had formed an organization and were insisting the salaries for 1948-1949 should be 15% in excess of the state minimum schedule and had presented their demands to the defendant Board, which appears to have been favorably inclined thereto if funds were available.

The minutes of the Board show that on April 17, 1948:

''The next thing discussed was the salary of teachers. It was moved by Mr. McMillin and seconded by Mr. Pack that the budget committee in preparing the teachers salary for next year follow the recommendation presented by McMinn County Teachers Organization, which was 15% above the state salary schedule for a nine month basis, and bring back before the Board of Education before final action is taken. The motion was carried by all members voting aye.''

This, of course, was tentative, but seems to have indicated the attitude of the Board.

In May, 1948, the Board elected teachers for the 1948-1949 term, most of whom are complainants herein.

On May 27, 1948, the minutes show:

"The next thing discussed was: To make final decision as to salaries of school employees or any change in any salary that the Board decided to make before the budget is made up. No definite action was taken on this. It was decided to wait until the budget has been gone over by the Council and see how much revenue is going to be available for the school department."

On June 26th following the Board decided to open schools on August 27th, but the minutes do not show salaries were discussed.

On August 7, 1948, the Board was called into extraordinary session to consider, among other things, a "definite decision on all salaries so that the contracts may be signed", but the minutes show "no action was taken on the salaries."

The law required a written contract to be executed by the teachers. An important part of these contracts was the salaries to be received. The opening of schools was imminent. It seems that the Board thought there could be an increase of at least seven to eight per cent over the state minimum salary schedule, so, without formal action by the Board, contracts were prepared calling for approximately this increase. It appears that the individual board members fixed the salaries for the teachers in their own districts. Some received more—some less—than this raise, but in the main the norm was an increase of seven to eight per cent. We conclude this was a temporary expedient or a tentative salary until the Board

could ascertain what funds would be available for increased salaries. These contracts were signed by the Chairman of the Board, the County Superintendent and the teachers.

Later it was ascertained that a 15% increase could be granted because of this: in the original budget a certain sum was set up for transportation and maintenance which came from local sources. However, there had become due McMinn County a considerable sum from the "overage" on the State Sales Tax which could be used for transportation and capital outlay, thus releasing this local fund for the purpose of paying salaries.

So, on October 2, 1948, the minutes of the Board show:

"The next thing discussed was salaries of teachers, attendance teachers, bus drivers and maintenance supervisors. It was moved by Mr. Pack and seconded by Mr. Dake that the teachers, excluding principals, coaches, and vocational teachers, be given 15% above their salary set by the State. That the attendance teacher, maintenance supervisor and bus drivers be given 15% above their last year's salary and the Superintendent of County Schools be authorized to change the contracts to coincide with this motion. Motion carried by members voting Aye on roll call."

Consequently, the Chairman of the Board and Superintendent took up the first contracts and executed new contracts antedated to Aug. 15, 1948, providing for this increase of 15% for the full nine months term.

When these teachers were paid the first months salary they received the amount stipulated in the first or temporary contract. When they were paid the second months salary, which was after the quoted action of the Board on Oct. 2nd, they were paid on this 15% increase as well as an additional amount to raise the first months salary

to the 15% increase. For the remaining seven months they received the full 15% increase.

This increase was paid and received in good faith. Apparently, the services were satisfactory because most of the teachers were re-elected for the 1949-1950 term.

A question then came up as to salaries. The teachers insisted they were entitled, under the Act before quoted, to receive a salary not less than that for the 1948-1949 term. The upshot of it was they signed contracts for the minimum salaries provided in the State schedule but interlined therein: "The teacher reserves all legal claims for higher bases of pay as provided for by the General Education Bill of 1949."

They were paid and received the amounts provided in the state minimum schedule. As noted in the first part of this opinion the complainants sue for 15% additional for the full nine months of 1949-1950.

The defendant Board took the position (a) that as there were no minutes of the Board showing authority for the execution of the first contract authorizing the seven or eight per cent increase, there was no contract, hence no right of recovery thereon; (b) that, as the second contract made pursuant to the action of the Board on Oct. 2, 1948, was not in effect at the beginning of the term there could be no recovery thereon; and (c) that the Act in question is void because it violates Article II, section 8, and Article 2, sections 28 and 2 of our constitution.

The learned Chancellor put down a memorandum opinion in which he said:

"The Court is of the opinion that the foregoing provisions of law are constitutional and valid and, therefore, binding upon McMinn County, or its Board of Education. The Court is further of opinion that the McMinn County Board of Education was obli-

gated to pay complainants a salary for the 1949-50 school term, not less than that contracted for originally for the school term 1948-49, plus the difference between the 1948-1949 and the 1949-1950 State Salary Schedules. In other words, the Court is of opinion that complainants are entitled to recover the increase of some 7 or 8%, approximately, which was payable out of local funds, provided in the original contracts made with them for the 1948-49 school term; and they are not entitled to recover the 15% increase, approximately, which was provided in the contracts negotiated and made retroactive following the October 2nd, 1948 meeting of the Board of Education.

"The Court is further of opinion that those teachers who were employed (1) During the 1948-1949 school term, and (2) at the Beginning of the 1949-1950 school term, are also entitled to recover the 7 or 8% increase, approximately, provided for those teachers similarly qualified and employed at the beginning of the 1948-1949 school term."

Pursuant to his holding a decree was entered, and instead of having a reference to ascertain the amounts due each of the complainants the parties agreed upon such amounts and recoveries were awarded therefor.

The assignments of error for defendants insist upon the defenses before noted, and, further, that there is no evidence that the increase granted in 1948-1949 were paid out of local funds.

The assignment of error of the complainants insist a recovery should have been allowed upon the basis of the increase of 15% provided in the action taken by the Board on Oct. 2, 1948.

■ Perhaps it would be proper to first take up the assault made upon the constitutionality of this Act. As

before noted, it is the General Education Bill, applying to all counties in the State. It does not, as is argued, impose greater tax burdens upon the citizens of McMinn County than are upon the citizens of other counties of the State. McMinn is a county of about average population. The Act in question does not single it out for the suspension of any general law, or to give any individual or group of individuals, any rights, privileges, immunities or exemptions as are not extended to any member of the community. By voluntary action it is an equalizing county. Having accepted the benefits it is charged with the obligations imposed by the same law. Or, as stated by astute counsel for the complainants, this county cannot have its cake and eat it, too. By the action of the Board of Education these raises were granted, and an amended budget adopted and approved by the County Council, or governing body.

■ Nor can we find anything violative of Article 2, Secs. 28 and 29 of our Constitution requiring equality and uniformity of taxation throughout the State. We suppose that every county in the State by reason of the management, or mismanagement of its fiscal affairs has various problems. Some relate to the County Fund Proper, some to Debt Service, some to Education, and so on. There is nothing in our constitution requiring that the county tax rate for these various services and activities must be uniform in every county.

We concur in the conclusion of the Chancellor that Ch. 9, Public Acts 1949, is a valid and constitutional enactment.

■ We now pass to the Board's fourth assignment of error to the effect that these salaries for 1948-1949 were not shown to have been paid out of local funds.

Altho it clearly appears from the testimony of Mr. Hutsell, superintendent during the 1948-1949 year, that the funds used for the paying of this excess were derived indirectly from the "overage" of the sales tax by the application of it to the payment of certain charges set up in the budget and then the application of such budgetary funds to the payment of salaries (approved later by the County Council), we cannot find anything illegal or unauthorized in this action. The application of the "overage" to this purpose simply resulted in a surplus in the fund for education which was used to pay the increased salaries. But, even though we assume the contrary, we do not find that the Act in question required the payment out of local funds further than Part B of section 7 of said Act provides that the counties participating in the State Equalizing Funds should not be required to raise during the biennium of 1949-1951 more money locally for school purposes than was raised during the school year 1946-1947. Instead of increasing the county was decreasing its appropriations for education, so that the levy was considerably lower than that of 1946-1947.

Having passed upon questions of what we consider of minor importance, we now pass to what we deem the controlling issue, i. e., the construction of the Act in question in light of the salaries fixed and paid by defendant Board.

So far as the 1948-1949 contract is concerned, we are dealing with an executed contract, not with rights under an executory contract. Could the county recover this 15% excess so paid under the authority of the Board of Education? Can it say these were not the salaries paid for that scholastic year? We do not think so.

The primary purpose of section 9 of this Act was to provide increased salaries for the teachers in our public

schools. It is true that in the first part of this quoted section it mentions "an increase above the salary for which he *originally contracted* for the school year, 1948-1949", and from this it is argued that the 15% raise cannot be used in the calculation. To this we cannot agree. In the second paragraph of said section it is provided that any teacher employed after the opening of the school term shall be guaranteed a salary increase as if he had been employed for the full term. So that, if we follow the argument made for the Board, any teacher employed after the granting of the 15% increase on Oct. 2, 1948, would be entitled to this salary basis for 1949-1950, whereas the teacher employed prior thereto would not be entitled to this benefit. This would be a ridiculous result, penalizing the professional teachers who are the very heart of our educational system.

We find in the third paragraph of this Section the express declaration "it being the legislative intent that every teacher * * * shall receive a salary not less than that contracted for *as of the beginning* of the 1948-1949 school term * * *." (Emphasis added.) It seems to us that this statement of intent is amply verified by section 9 of said Act. It was not designed to regulate the manner of making contracts, or to prevent the Board from fixing salaries within budgetary limits, or matters of that sort, but was intended to secure to the teachers a salary for 1949-1950 not less than that paid to them, or to others with similar qualifications, for the year 1948-1949. All subordinate matters must yield to this cardinal purpose.

Consequently, we hold the appellant teachers are entitled to recoveries of 15% of the salaries paid them, or to those of similar qualifications for the year 1948-1949.

We suppose the parties can agree upon the amounts due; if not, the cause will be remanded for a reference upon this feature.

The assignments of error filed by the defendant Board are overruled. The assignment of the complainant teachers is sustained, at the cost of defendant.

Decree accordingly.

Modified and as modified affirmed.

McAmis and Howard, JJ., concur.